RUSSELL COBB, WILLIAM KING AND JOHN J. WATKINS
v. PETER SLIMMER.

*Abatement of mill-dam.*

An injunction to abate a dam which had existed about thirty years and had been erected under permission to raise the water to a certain height, was *denied* where the proofs did not conclusively show that the height agreed upon had been exceeded. But as the case contained facts that might properly be submitted to a jury, the denial was without prejudice to any proceedings at law, or to proceedings in equity if these facts should be found against defendant.

Appeal from Lapeer. Submitted Oct. 22. Decided Jan. 12.

INJUNCTION. Dismissed. Complainants appeal. Affirmed.

*Wm. Hemingway* and *W. W. Stickney* for complainants.

*Geer & Williams* for defendants.

GRAVES, J. August 2d, 1876, the complainants filed this bill to restrain the defendant from keeping a dam below their premises on Farmer's Creek in Hadley, Lapeer county. The defendant answered on the 12th, and proofs were subsequently taken at great length. In January last the case was heard on the merits, and after taking time to consider, the court on March 2d dismissed the bill with costs. The precise grounds of dismissal are not explained in the record. An appeal was then taken on the part of complainants. King seems to have transferred his interest to a Mr. Tubbs since the commencement of the suit.

The premises described as belonging to Watkins, and being those chiefly exposed, were originally, with others now claimed by Pierson, possessed by the late William Hart who purchased and settled on them in 1835. The premises said to be owned by Mr. Cobb abut on the west, but being higher up and more remote are far less in danger. The general features of the place are such as are often met with. There

seems to be a marl or hard-pan basin of irregular outline and containing between two and three hundred acres, and nearly filled with muck and bog except a distant point at the north where there is a small area of open water called Duck Lake. On the west side of this little pond and also at the northwest extremity or arm of the basin is a fringe of tamarack trees. The rest, with the exception of two or three small islands of timber, is what is called open marsh.

Several small streams approaching from different quarters and draining a considerable part of the township of Hadley pour their waters into this reservoir. One stream forms the outlet of the little lake. The most important courses are two, now known as Hamlin and Beden creeks. The marsh narrows at the east end nearly to a point and the surplus waters are there voided through an outlet which is not deep enough to empty the basin and not wide enough, in case of an unusual accumulation, to prevent an overflow. There seems to be a rim which prevents the free passage of the water in the outlet and causes at certain stages what are called ripples. Several rods below where the water leaves the marsh the outlet is crossed by the main street of the village of Hadley, and the stream is spanned by a bridge, and a short distance further down is the dam in question. A small pond is formed embracing from six to ten acres and extending from the dam to a point a little way above the bridge.

In recent years and including a part of the interval since the institution of the suit, the complainants and Mr. Tubbs have made several ditches in the marsh, and in some places new channels have been constructed for the natural courses, making the passages shorter and the beds narrower and deeper. At the time the suit was commenced the dam had been maintained on the same site about thirty years. The witnesses differed in their recollection as to the precise year in which it was first put up. The exact time is not important. It was then erected by a man by the name of Fortune, and it seems that it was agreed between him and William Hart at that time that he should have the right to set the water back to a certain point, and that Hart in 1859 com-

plained that Fortune ceased to regard the agreement and was raising the water above the point established. The consequence was that Hart brought an action in the circuit court for the alleged unlawful flowing. But the case was taken out of court and the controversy submitted to the determination of five neighbors, and they made a decision in which all acquiesced.

They selected a stump situated in the pond near the mill to serve as a fixed gauge of the height the water should not exceed. This high-water mark, as the witnesses call it, was either the top of the stump or a shoulder cut in about eight inches below the top, and on this point the evidence is utterly conflicting. The complainants' witnesses who testify on the subject, describe the mark as a place in the side of the stump about eight inches below the top, and those of defendant, including the two arbitrators sworn, say the top of the stump was to be the water mark. Some attention at the time of the arbitration seems to have been given to a place in the outlet of the marsh spoken of as a rapid or "ripple." But the witnesses differ about that. Those for the complainants fix it at a point about due south of the old log house of William Hart, and those for defendant between thirty and forty rods further up the outlet. The difficulty of identification is much enhanced by the fact that a new channel has been made opposite the old one at the point indicated by complainants' witnesses. Much is said about the depth of water at the "ripple" at different times, and the depth given in case of the mill pond being at the high-water mark fixed by the arbitrators at the stump, and the true position of the ripple is chiefly important as bearing on the value of these comparisons. A comparison or an offer of one which contemplates the ripple as at a place directly south of the site of the old log house can be of little, if any, value if the facts are not sufficient to fix it there and show that the other is not the true locality. It does not appear from the case that the arbitrators designated the ripple, whether situated at one spot or the other, as a mark for high water.

The claim for an abatement of the dam on the ground of

its being a source of disease is not supported by the evidence, and moreover the case in that view of it is not urged.

The complainants' proofs are very full to the effect that their premises are not injured or liable to be injured by the dam unless the water is raised higher than the mark which the arbitrators fixed. Their position seems to be however that in this they mean the mark as they insist the arbitrators placed it, some eight inches below the top of the stump, and they contend that defendant has been accustomed to raise the water to the top of the stump. As the defendant claims that the arbitrators made that the limit, he no doubt has generally raised the water to it. But whether the line designated by the arbitrators was on a level with the top of the stump or with a point eight inches lower, or whether those preceding defendant were governed by the one or the other, the implication is very strong that complainants regarded the limit which was actually applied as one which gave no cause for complaint, and this state of accord seems to have continued for more than ten years subsequent to the arbitration. Again, it is a part of the case made by complainants' evidence that Fortune and those succeeding him down to the time of defendant, habitually observed the decision of the arbitrators, and that during their holding the back flow was not injurious. And on the other hand the defendant makes proof that during his holding the water has been raised no higher at the stump than it was by his predecessors.

The defence contends further that the opening at the bridge is not sufficiently capacious, and that if the dam were wholly pulled down the bridge would hinder the water from passing off faster than at present. The ditching is also mentioned as largely contributing to the conditions to which complainants object. It is said to have been so designed and executed as to derange the natural circulation and disturb the balance between the inflow and outflow to the detriment of the latter, and it is claimed also that a portion of the ditches have been suffered to form bars in some places and choke up in others. In reply to these considerations it is contended by complainants that their evidence proves that

the objectionable conditions are directly owing to the state of water in the pond. That every change there is immediately followed by a corresponding change on the marsh.

It is unnecessary to pursue the various facts and contending views. The essence of the controversy is whether complainants are right in their claim that the defendant raises the water above the old mark originally assented to and which the arbitrators caused to be indicated permanently on the stump. Because if they are not correct in this, and the defendant does not exceed the old limit, there is no foundation in the case for equitable interference. Indeed this may be regarded as virtually conceded. The actual extent of use formerly acknowledged to be right, seems not to be controverted. The alleged grievance is that it is exceeded. Coming then to the substantial question—is the state of the proofs such as to justify the Court in reversing the decree below and in proceeding to grant a decree here in favor of complainants? A thorough examination and re-examination of the record leads to an answer in the negative. No solid ground of definite relief can be deduced from the proceedings. At least there is no such distinct and certain showing as would warrant the Court in setting aside the decision of the circuit judge and in giving a decree against the defendant.

There are two or three questions of fact, which, in case it were necessary to have them settled, might with great propriety be submitted to a jury, and after much consideration it is thought best to make the dismissal without prejudice to any future proceedings at law, nor to any proceedings in equity in case the facts shall have been decided by a jury adversely to the defendant. The defendant will recover his costs.

The other Justices concurred.